IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LISA GARLAND, et al.,                :

    Plaintiffs,                       :

v.                                   :

SERVICELINK L.P. d/b/a               :
SERVICELINK, INC.,                       Civil Action No. GLR-13-1472
SERVICELINK, LLC, SERVICE            :
LINK, FNF, and SERVICE LINK, A
DIVISION OF CHICAGO TITLE            :
INSURANCE COMPANY,
                                     :
    Defendant.
                                     :

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Lisa and Henry Garland (the "Garlands") filed this action, on behalf of themselves and a putative class of similar persons, against Defendant ServiceLink L.P. d/b/a ServiceLink, Inc., ServiceLink, LLC, ServiceLink, FNF, and Service Link, a division of Chicago Title Insurance Company ("ServiceLink"),[1] for the alleged violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 <u>et seq.</u> (West 2013) (Count I), and breach of contract (Count II). The Garlands seek class action certification, damages, and injunctive relief. Presently before

---

[1] ServiceLink notes that Service Link, a division of Chicago Title Insurance Company, was the entity that provided real estate settlement services to the Garlands. (Def.'s Mem. Supp. Mot. to Dismiss Am. Compl. at 1, ECF No. 15-1). That entity is now named Service Link, LLC. (<u>Id.</u>)

the Court is ServiceLink's Motion to Dismiss the Garlands' Amended Class Action Complaint. (ECF No. 15).

The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2011). For the reasons outlined below, ServiceLink's Motion will be granted as to Count I and denied as to Count II. The Garlands will be granted fourteen days leave to amend their Amended Class Action Complaint as to Count I.

## I. BACKGROUND[2]

ServiceLink is a Pennsylvania company that provides real estate settlement services to consumers in various states. ServiceLink performs a bulk of its operations from its headquarters in Pennsylvania but relies on subcontractors, known as "closing agents," to deliver the paperwork it prepares to consumers in other states. In addition to the fees consumers pay for its settlement services, ServiceLink typically withholds filing fees, property taxes, and recordation taxes from the loan proceeds disbursed at closing. It then assumes the responsibility to pay the fees and taxes on its consumers' behalf. Using this method, ServiceLink has closed thousands of residential mortgage loans throughout the United States since 2010.

---

[2] Unless otherwise noted, the following facts are stated as alleged in the Amended Class Action Complaint. (ECF No. 14).

2

The Garlands are Maryland residents and own the property located at 614 Lee Place in Frederick, Maryland (the "Property"). On November 11, 2011, the Garlands went to settlement with Bank of America, N.A. on a refinancing loan for the Property in which ServiceLink acted as the Garlands' settlement agent. ServiceLink offered to provide settlement services to complete the loan refinance, and the Garlands accepted the offer and paid ServiceLink in reliance. Despite the arrangement, the Garlands do not allege to having signed a formal agreement, noting only that the terms were detailed in a HUD-1 Settlement Statement (the "HUD-1 Statement"), which the Garlands concede is not a contract.

On November 11, ServiceLink collected $1,303.00 from the Garlands' loan proceeds to pay fees and taxes on their behalf, evidenced by the HUD-1 Statement. In addition, the Garlands allege that ServiceLink claimed to have: (1) completed an Affidavit of Consideration and Disbursement on or about November 15, 2011; (2) completed a tax certification on October 27, 2011; (3) requested a payoff of Lisa's prior loan and sent the confirmation letter to her prior lender on November 11, 2011; (4) accepted and processed the settlement documents from the Garlands' closing agent; (5) collected the loan proceeds and disbursed them appropriately; (6) completed the closing instructions as required by Bank of America, N.A.; and (7)

prepared the deed to add Henry as an additional owner of the Property. The Garlands allege that ServiceLink never rendered any of those services, and that repeated efforts to obtain copies of the deed and other settlement documents went unanswered.

On April 15, 2013, the Garlands, for themselves and all others nationwide who, within the last six years, paid ServiceLink for services it did not render, filed suit in the Circuit Court for Baltimore City. (ECF No. 2). Shortly thereafter, ServiceLink removed the action to this Court (ECF No. 1), and moved to dismiss the Garlands' first Class Action Complaint (ECF No. 11).[3] The Garlands subsequently filed an Amended Class Action Complaint on June 14, 2013. (ECF No. 14). ServiceLink now moves to dismiss the Amended Class Action Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15).

## II. DISCUSSION

### A. Standard of Review

To survive a Rule 12(b)(6) motion, the complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

---

[3] ServiceLink's first Motion to Dismiss (ECF No. 11) will be denied as moot.

4

U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005).

**B. Analysis**

**1. Violation of the Pennsylvania Consumer Protection Law**

The Court will grant ServiceLink's Motion as to Count I. Although non-Pennsylvania residents may assert claims under the UTPCPL, Maryland choice of law principles require the Garlands

5

to file suit under Maryland law because their injury occurred in Maryland.

        **a.**    **Non-Pennsylvania Residents**

ServiceLink contends that the Garlands lack standing to sue under the UTPCPL chiefly because the UTPCPL only protects Pennsylvania residents. To the extent nonresidents may sue under the UTPCPL, ServiceLink argues the Garlands lack standing because their injury did not occur in Pennsylvania. The Garlands maintain that non-Pennsylvania residents can assert claims under the UTPCPL, and that the UTPCPL is applicable in this case because ServiceLink operates from Pennsylvania and the alleged fraudulent conduct occurred there. The Court partially agrees with the Garlands.

The UTPCPL prohibits individuals and businesses from engaging in unfair or deceptive acts or practices in the course of trade or commerce. 73 Pa. Stat. Ann. § 201-3. It defines "trade and commerce" as including "any trade or commerce directly or indirectly affecting the people of this Commonwealth." Id. § 201-2(3). The UTPCPL also provides a private cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act

6

or practice declared unlawful" under the statute. Id. § 201-9.2(a).

Non-Pennsylvania residents may assert a claim under the UTPCPL if the injury occurred in the state or they were engaged in a transaction within the state. See Haggart v. Endogastric Solutions, Inc., No. 10-0346, 2011 WL 466684, at *7 (W.D.Pa. Feb. 4, 2011) (allowing a nonresident to proceed under the UTPCPL where he had "a sufficient nexus with Pennsylvania" and because "there is no decision by a Pennsylvania state court limiting application of the UTPCPL to Pennsylvania residents" (quoting Baker v. Family Credit Counseling Corp., 440 F.Supp.2d 392, 413 (E.D.Pa. 2006)) (internal quotation marks omitted)); Mikola v. Penn Lyon Homes, Inc., No. 4:CV-07-0612, 2008 WL 2357688, at *3 (M.D.Pa. June 4, 2008) (explaining that the UTPCPL protects nonresidents engaged in transactions within Pennsylvania); but see Lewis v. Ford Motor Co., 263 F.R.D. 252, 258 n.7 (W.D.Pa. 2009) ("[I]ndividuals who are not Pennsylvania citizens have no standing to bring suit under the [UTPCPL].").

Nonetheless, federal district courts have been reluctant to allow consumer protection class action suits to proceed. See Baker, 440 F.Supp.2d at 414 (noting "the problem of nationwide classes which seek to apply state consumer protection laws . . . because choice of law would require applying the consumer protection law of each class member's home state"). This

7

reluctance, however, is not necessarily a complete bar. Where the named plaintiffs have not yet moved for class certification, the Court need only consider whether they have standing individually to file suit under the UTPCPL.[4] Haggart, 2011 WL 466684, at *7; Rosenberg v. Avis Rent A Car Sys., Inc., No. 07-1110, 2007 WL 2213642, at *4-5 & n.5 (E.D.Pa. July 31, 2007).

The Garlands thus may file suit under the UTPCPL as non-Pennsylvania residents, but their ability to do so rests on whether their injury occurred in Pennsylvania. As explained in the following section, the Court concludes it did not.

  b.  **Choice of Law**

ServiceLink argues the UTPCPL is inapplicable because choice of law principles focus on where the injury occurred. The Garlands argue the UTPCPL applies because ServiceLink's Pennsylvania location establishes "a sufficient nexus," and it should "be expected to comply with the laws where it operates." (Pls.' Opp'n Def.'s Mot. to Dismiss at 15). They also contend that the acts or omissions giving rise to their claim occurred

---

[4] The Garlands show no intent to sue under the consumer protection laws of other states if the putative class is certified, arguing that the UTPCPL is applicable to every putative class member because ServiceLink operates centrally from Pennsylvania. (Pls.' Opp'n Def.'s Mot. to Dismiss at 15, ECF No. 18). As explained infra, this reasoning is flawed under Maryland choice of law principles. Nevertheless, "the application of the UTPCPL to the putative class members 'will be best adjudicated upon submission of [the named plaintiffs'] Motion for Class Certification.'" Haggart, 2011 WL 466684, at *7 (quoting Rosenberg, 2007 WL 2213642, at *5 n.5).

8

in Pennsylvania. The Garlands' arguments, however, are unavailing because Maryland law focuses on where the injury occurred rather than on a defendant's conduct and location.

As a federal court sitting in diversity, this Court must apply Maryland's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Maryland generally follows the lex loci delicti rule outlined in the Restatement (First) of Conflict of Laws §§ 377–390 (1934). Lewis v. Waletzky, 576 F.Supp.2d 732, 735 (D.Md. 2008); Lab. Corp. of Am. v. Hood, 911 A.2d 841, 845 (Md. 2006). Under this rule, when the events giving rise to an action occur in more than one state, Maryland courts "apply the law of the State where the injury . . . occurred." Hood, 911 A.2d at 845. When the action involves fraud, "the place of wrong is where the loss is sustained, not where [the] fraudulent representations are made." Restatement (First) of Conflict of Laws § 377 n.4; see also Cooper v. Berkshire Life Ins. Co., 810 A.2d 1045, 1052 (Md.Ct.Spec.App. 2002) (applying Maryland law where the insurance company, in Massachusetts, made the alleged misrepresentations to the plaintiff in Maryland, delivered the policy to Maryland, and the plaintiff lived in Maryland).

Although ServiceLink is headquartered in Pennsylvania, and conducts its business from there, the Garlands suffered their

9

economic loss in Maryland.[5]  Accordingly, the injury occurred in Maryland and the Garlands cannot sustain a claim under the UTPCPL.  This claim must be brought under Maryland law and will be dismissed.  ServiceLink's Motion will be granted as to this count.  The Garlands will be granted leave to amend their Amended Class Action Complaint as to this count, however, within fourteen days from the date of the attached Order.

2. **Breach of Contract**

The Court will deny ServiceLink's Motion as to Count II because the Garland's sufficiently alleged breach of contract. ServiceLink relies on Iglesias v. Pentagon Title & Escrow, LLC, 51 A.3d 51 (Md.Ct.Spec.App. 2012), to argue it does not have a contractual relationship with the Garlands because settlement agents contract with lenders, not borrowers.  The Garlands argue they have a right to sue under contract because they paid ServiceLink for services it promised to perform but did not. The Court agrees with the Garlands.

---

[5] The illustration accompanying the Restatement perfectly demonstrates this concept:

> A, in state X, makes false misrepresentations by letter to B in Y as a result of which B sends certain chattels from Y to A, in X.  A keeps the chattels. The place of the wrong is in state Y where B parted with the chattels.

Restatement (First) of Conflict of Laws § 377 n.4, illus. 5.
The Garlands parted with the money necessary to pay ServiceLink for its services in Maryland, thus the wrong occurred in Maryland and Maryland law applies.

ServiceLink's reliance on Iglesias is misplaced. Iglesias centered on a prospective borrower who became the victim of identity fraud while attempting to purchase a new home. Id. at 55. Iglesias initially engaged one loan officer, Ramirez, to help her secure financing but ended the negotiations and pursued a different home with another loan officer instead. Id. She later discovered that Ramirez and others had purchased two properties in her name under forged powers of attorney. Id. at 55–56. The perpetrators signed sales contracts, obtained financing, and consummated real estate settlements in Iglesias's name without her knowledge. Id. at 53.

Iglesias sued, among others, the entity that acted as the settlement agent in both transactions, arguing it owed her a duty to verify the validity of the forged powers of attorney. Id. at 53, 70. She argued she was in contractual privity with the settlement agent because it received its fee from the "purchaser's funds" at closing. Id. at 71–72. The Court of Special Appeals of Maryland disagreed, concluding that Iglesias did not have a contractual relationship with the settlement agent because "it was acting as an agent for the lender in each transaction to facilitate the closing of the subject loans." Id. at 72; see also id. at 75 ("As the settlement agent, . . . its obligation was to carry out the lenders' instructions."). The court also explained that Iglesias could not argue she was

11

not a true party to the subject transactions, yet maintain that she was in privity with the settlement company because she "paid" for its services with fraudulently marked funds. Id.

Iglesias is distinguishable, however, in two ways. First, the borrower in Iglesias had no knowledge of the real estate settlement, and the symbolism of paying the settlement agent from the funds bearing her name was of no consequence to the court in determining contractual privity. Here, the Garlands allege that a contract exists based on more than mere payment from fraudulent purchaser's funds. They engaged and agreed to pay ServiceLink based on the settlement services it offered to provide. The Garlands were knowing and active participants in the transaction.

Second, SerivceLink owed more than an obligation to carry out the lender's instructions. Considering the facts alleged in the Complaint as true, ServiceLink purported to provide myriad services to the Garlands in addition to completing "the general and specific closing instructions required by their lender." (Am. Compl. ¶ 17(vi), ECF No. 14). Among those services, ServiceLink purported to pay the Garlands' recording fees and transfer taxes, complete an affidavit and tax certification, and perform services to close a loan with the Garlands' prior lender. (Id. ¶¶ 16-17). These allegations are sufficient to indicate the existence of a contractual relationship.

In this regard, Bushbeck v. Chicago Title Ins. Co., 632 F.Supp.2d 1036 (W.D.Wash. 2008), is more instructive. The Bushbeck plaintiffs were borrowers who sued their settlement agent for breach of contract, alleging it collected fees for services it did not perform while refinancing their home. Id. at 1037-38. Specifically, the Bushbecks alleged that the settlement agent kept $270 in reconveyance fees even though it did not perform the reconveyance. Id. at 1038. A HUD-1 Settlement Statement evidenced the Bushbecks' payments to their settlement agent. Id. The United States District Court for the Western District of Washington concluded that the Bushbecks properly alleged breach of contract and declined the settlement agent's motion to dismiss as to that claim. Id. at 1039.

Similarly, the Garlands allege a series of promises ServiceLink offered to provide on their behalf and for which ServiceLink was paid. See B-Line Med., LLC v. Interactive Digital Solutions, Inc., 57 A.3d 1041, 1055 (Md.Ct.Spec.App. 2012) ("The elements of a contract are offer, acceptance, and consideration."). They further allege that ServiceLink failed to provide those services. As such, the Garlands sufficiently allege breach of contract. Beyond this, the determination as to whether a contract existed, or whether any alleged contract was breached, is more appropriate for later stages of these proceedings. See Bushbeck, 632 F.Supp.2d at 1039 (noting that

13

whether a party breached a contract is a factual determination best left for trial); B-Line Med., LLC, 57 A.3d at 1056 (noting that the existence of a contract is a jury question). The Court will, therefore, deny ServiceLink's Motion as to this count.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT ServiceLink's Motion to Dismiss (ECF No. 15) as to Count I but DENY the Motion as to Count II. The Garlands will be granted fourteen days leave to amend Count I of their Amended Class Action Complaint.

Entered this 25th day of September, 2013

/s/
_____
George L. Russell, III
United States District Judge